Richardson, J.,
delivered the opinion of the court:
This action is brought under the provisions of the following-special act of Congress (22 Stat. L., 802, ch. 106):
“AN ACT for the relief of certain owners of the steamer Jackson.
“ Whereas the United States, on the eighteenth day of June,, eighteen hundred and sixty-five, chartered the steamboat Jackson to run on the Chattahoochee River in the service of tlie-United States, and while so employed it was wholly destroyed by fire caused by unavoidable accident; and
“ Whereas the Secretary of the Treasury, on the application of Aaron Barnett and Daniel Fry for payment to them as alleged owners of said steamboat, of the value of the same, adjudged and decided 1 that the steamer Jackson was lost by unavoidable accident while in the military service of the United) States by contract, and that the owners thereof were entitled! to the payment of the value thereof under acls of March third,, eighteen hundred and forty-nine, and March third, eighteen hundred and sixty-three; ’ and
“ Whereas the value of said steamer was duly ascertained by the Treasury Department to be thirty-six thousand one hundred! and twenty-five dollars, which was paid to the said Barnett and Fry, on the execution of the bond of said Barnett as principal and Louis C. Schiffer and Gabriel H. Schiifer as sureties,, in the sum of twenty-six thousand dollars, payable to the United States, and ‘ conditioned that if the above bounden obligors* their heirs, executors, administrators, or any of them, shall andi do well and truly pay or cause to be paid unto any person oír persons who shall establish a valid claim to any of the five-fourteenths of the steamer Jackson the full amounts as paid by the United States to the said Barnett and Fry, or shall pay or cause to be paid unto the United States, or their assigns, the-full amounts paid by the United States on account of said five-fourteenths of the said steamer Jackson, with the legal costa. *662 and interest on such sum, without any defalcation or delay, then the said bonds to be void,’ and so forth; and
“ Whereas John It. Ely, John E. Lockey, A. E. Godwin, S. and J. Irwin, Thomas M. White, surviving partner of T. and J. M. White, and Ellison and Hughs, partners or joint owners, claim that they are the owners of said five-fourteenths of said steamer Jackson, in different number of shares, and entitled to their pro rata share of said thirty-six thousand one hundred and twenty-five dollars,amountingto twelve thousandninehundred and one dollars and seventy-eight cents, and have demanded payment of the same from the United States; and
“ Whereas Barnett and Fry deny the ownership of said claimants of said five-fourteenths, and also claim that they, Barnett and Fry, have made payments and advances of large sums of money for and on account of repairs and materials for repairs for said steamer Jackson, which .they are entitled to have deducted from any sum for which they may be liable on said bond, or on account of said payment to them of the said twelve thousand nine hundred and one dollars andseventy-eight cents.
11 Therefore for the purpose of having the real owners of said five-fourteenths of said, steamer Jackson legally ascertained, and to enable the said Barnett and Fry, in the event that said claimants, or any of them, shall establish their right to said five-fourteenths or any part thereof, to show by legal proof what, if any, advances or payments they, or either of them, have made for and on account of any repairs of the said steamer, and legally chargeable against all the owners thereof.
“ Be it enacted, cfie., That John K. Ely, John B. Lockey, A. E. Godwin, S. and J. Irwin, partners or joint owners, and Thomas M. White, surviving partner of T. and J. M. White, and Ellison and Hughs, partners or joint owners, be, and they are hereby, authorized within six months, and not thereafter, after the passage of this act, to bring suit in their joint names in the Court of Claims against the United States, and that said Court of Claims shall have jurisdiction of said suit to hear and determine the same for the purposes aforesaid, and to try all issues joined between the parties thereto in relation to the owner hip of the five-fourteenths of the said steamer Jackson, and determine the right of the said plaintiffs, or any of them, thereto, and to the said twelve thousand nine hundred and one dollars and seventy-eight cents, the value thereof.
“ And also to try and determine all issues in relation to any payments or advances made by Barnett and Fry, or eithér of them, for and on account of any debt legally created against said steamer Jackson, for repairs, material, clerk hire, or work and labor, for which the said steamer was liable in law or equity;
“ And should tlie said plaintiffs, ox any of them, establish their right to said five-fourteenths, or the said value thereof, or any portion of the same, and should it be shown by legal proof *663 that said Barnett and Fry, or either of them, have made payments or advances for repairs, materials, clerk hire, or work and labor, for which said steamer was chargeable in law or equity, the said court shall render judgment against the United States and in favor of each of said claimants for so much of said twelve thousand nine hundred and one dollars and seventy-eight cents as the proof may show each to be entitled, less the amount the proof may show the said Barnett and Fry, or either of them, have paid or advanced for and on account of said steamer as aforesaid;
“And the said court shall cause notice in writing to be served in person upon said Aaron Barnett and Daniel Fry, in whieh shall be stated the commencement of said suit by said plaintiffs, and the cause thereof, and requiring them to appear at said court and establish, if they can, by legal proof, their ownership of said five-fourteenths of said steamer Jackson, and also what payments or advances they, or either of them, have made for and on account of repairs, material, or work and labor, for which said steamer was liable.
“ Approved March 3,1883.”
The steamer Jackson was lost while in the employment of the United States, and there was awarded to the owners by the Treasury Department the sum of $36,125. This amount was all paid to Barnett and Fry, who were the undisputed owners of five-fourteenths, and who claimed to be owners of the remainder by assignment. They gave a bond of indemnity to the defendants upon such payment.
The act authorizes parties who were the original owners of five-fourteenths .to bring this action to be here tried upon two issues •, first, in relation to the ownership of the shares claimed. by them and their right to proportionate parts of the sum so awarded; and, second, in relation to any payments or advances made by Barnett and Fry, or either of them, for and on account of any debts legally created against said steamer for repairs, material, clerk hire, or work and labor, for which said steamer was liable in law or equity.
If the claimants, or any of them, establish their ownership, and said Barnett and Fry prove payments and advances by them as aforesaid, the court-is authorized to render judgment against the United States for so much of their respective shares as the proof may show each to be entitled, less the amount said Barnett and Fry, or either of them, have paid or advanced as aforesaid.
*664 1. The first question, then, is as to the ownership of the steamer, or of the claim against the government at the time the payment was made to Barnett and Fry.
Barnett and Fry claimed title to the whole under the following assignment, made after the vessel was destroyed and before the date of the award for its loss:
“Woodville, Ala., March 20th, 1866.
“ This agreement witnesseth that Davis & Wilson, agents for the Marianna and Apalachicola Steam Navigation Company, for themselves and the other stockholders in said company, for and in consideration that A. Barnett and Daniel Fry do assume and pay all the outstanding debts and liabilities of the steamboat Jackson and owners have this day bargained and sold, and by this agreement doth bargain, sell, and convey, unto the said A. Barnett and Daniel Fry all of the right, title, and interest of themselves and others in said company, including the machinery, hull, and contents, and all other claims due the steamer Jackson and owners.
“Witness our hands this 20th day of March, 1866.
“Davis & Wilson, Agents
Davis & Wilson were the owners of four-fourteenths, but their rights are not involved in this case, as they are not authorized by the act to bring an action and are not claimants herein.
As to all other owners of the steamer and the claim against the government for its loss, we have no doubt that the assignment was without force, for two reasons; first, as ship’s agent merely Davis & Wilson had no authority to make such a contract, sale, and transfer; and, second, because as an assignment of a claim against the United States before warrant issued is void both as between the parties and as against the defendants under the provisions of Revised Statutes, section 3177. (Gill’s Case, 95 U. S., 407; Spofford v. Kirk, 97 U. S., 484.)
If Davis & Wilson had authority to make the assignment for any of the owners but themselves, and the defendants, relying upon it, had paid the money on the faith of it, without objections from such owners, the claimants might have been es-topped from thereafter demanding any part of the money from the United States (Bailey’s Case, 15 C. Cls. R., 491). The defendants, however, did not rely upon the assignment alone, but took a bond of indemnity from Barnett, thus leaving open to controversy the assignment as to all parties interested.
*665 After the money was paid, S. & J. Erwin, owners of one-fourteenth, by one of the firm, gave the following ratification of the assignment:
“Tallahassee, Florida, November 30, 1876.
“For valuable consideration, received by us through our agents, Messrs. Davis & Wilson, of the steamer ‘ Jackson,’ which was burned in Apalachicola Bay, Florida, July, 1865, while in the service of the Government of the United States, we hereby ratify the transfer made by the said Davis & Wilson, agents, to Barnett and Fry, of any and all interest we then had or now hold in said steamer.
“S. & J. Erwin,
“P’ John M. F. Erwin.”
This they had a right to do, and it is a binding ratification of the payment of their share to Barnett and Fry, and they are estopped from setting up any further claim thereto against the United States.
This leaves the remaining owners of four fourteenths the right to recover their respective shares of the money awarded,, less the deductions required by the act under which they sue.
2. The next question is as to the amount to be deducted from the shares of the claimants who have proved ownership.
Barnett and Fry advanced and paid, debts and other expenses, authorized to be proved and deducted, to a greater or less extent, from the claimants’ shares, the sum of 114,362.58. The defendants contend that the provision of the act which directs the court to enter judgment in favor of each claimant for so much of the amount paid by the defendants to Barnett and Fry as the proof may show each to be entitled, “less the amount the proof shows the said Barnett and Fry, or either of them,, have paid or advanced for and on account of said steamer as aforesaid,” makes the shares of the claimants, whose ownership is proved to the extent only of four-fourteenths, subject to a deduction of the whole amount so paid or advanced, without reference to the other shares.
If this be the true construction of the act then the claimants-would recover nothing, because their shares of the award amount only to $10,321.43, while the payments and advances-are more than $14,000.
The defendants stand upon the strict letter of that part of the act which we have quoted. Taken by itself the language *666 there used, might seem to give some slight plausibility to that argument, but when read in connection with other parts of the act, and with the preamble, which may be referred in aid of the construction of the act (Beard et al. v. Rowars, 9 Pet., 301; Copeland v. The Memphis and Charleston Railroad Company, 3 Wood, 661), it becomes clear that such an interpretation is not warranted.
The tenor of the whole act shows that the payments and advances made by Barnett and Fry were first to be deducted from the amount collected by them, and that the claimants were to have their proportion of the balance, according to their shares in the ownership of the vessel. Such was the explanation given by the Senate Committee on Claims, who reported the bill, and, in our opinion, it correctly interprets the act. (Beport No. 256, Forty-seventh Congress, first session.)
The defendants further contend that the cost of collecting the award from the government, paid or allowed by Barnett ■and Fry, or a proportional part of it, should also be deducted from the claimants’ share.
The act does not so provide, but on the contrary limits the deduction to advances and payments on account of debts and costs for repairs, materials, cleric hire, and worlc and labor. In determining the amount of the judgment we cannot go beyond the act to allow other and different set-offs.
The claimants ask for interest on the balance found due them of the money received by Barnett and Fry. This cannot be granted, because it is not expressly authorized by the act, and section 1091 of the Bevised Statutes declares that “noin-terest shall be allowed on any claim up to time of the rendition •of judgment thereon by the Court of Claims, unless upon a contract expressly stipulating for the payment of interest.”
There is nothing in this case which takes it out of the general provision against the allowance of interest by this court.
Judgment will be entered in favor of John B.Elyfor $1,551.47; of the executors of Thomas M. White for $1,554.47; of the firm -of Ellison & Hughes for $1,554.47, and in favor of John B. Hockey and A. B. Goodwin, each for $773.23, and the petition will be dismissed as to S. & J. Erwin, who have failed to prove •ownership.