Hay, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit brought by the plaintiff, Theodore Weis-berger, against the United States for damages arising from the suspension of a contract entered into by the plaintiff with the United States.
On January 5, 1907, the plaintiff entered into a contract with the United States whereby he agreed to complete the work described as schedules 6-A and 7-A of the main canal, *7 Tieton l’eclamation project, Washington. The work consisted in manufacturing metal reinforced cement shapes for use as a lining for the main canal of the Tieton project, and of laying the shapes so as to form a continuous concrete lined canaJ.
The Secretary of the Interior, on October 23, 1907, extended the time for the completion of the work to October 15, 1908, because of delays, for which the plaintiff was not responsible.
The work was carried on through the working season of 1907 by the contractor in a satisfactory manner, until the work was ordered stopped by the Government officers because of unfavorable weather conditions. The work provided for in the specifications was of a novel and untried character.
On February 1, 1908, the Secretary of the Interior suspended the contract. Before the contract was suspended by the Secretary of the Interior the plaintiff made repeated applications to the officers of the Government for changes in the specifications in order that the performance of the contract might be made possible. These applications were either refused or not acted upon. Immediately after the order of suspension the officers of the Government, authorized by the Secretary of the Interior, in the absence of the plaintiff, and without his assent, took possession of all plant, machinery, and equipment, which had been purchased by the plaintiff for use on the work, and employed the same in the completion of the contract work or other work being done by the United States.
On May 15,1908, the Government began construction work on the canal and completed it on October 15, 1909.
Following the completion of the work the United States brought suit in the Circuit Court of the United States for the Eastern District of Washington against the plaintiff and the surety on his bond to recover $51,095.05 alleged to have been expended in excess of the contract price in completion of the contract work undertaken by the plaintiff, and on a trial of the issues involved in said suit judgment was rendered in favor of the defendant and against the United States and the suit was dismissed. An appeal was taken by *8 the United States to the Circuit Court of Appeals and the judgment of the trial court was affirmed.
The defenses set up and pleaded by the defendant in said suit were: 1. That the work done by the Government after the suspension of the contract was not the work specified in the contract, but was substantially different work. 2. That the contract was impossible of performance. 3. That the Secretary of the Interior was guilty of fraud in suspending the contract, or that he committed such a gross mistake in suspending it that fraud on his part was necessarily to be implied. Evidence produced before the court and jury tended to show that all or any one of these contentions were true.
The judge in his charge to the jury stated that there were two issues for their consideration: 1. Was the contract in controversy possible of performance at the time it was entered into? 2. Was the Secretary of the Interior guilty of fraud, or did he commit such a gross mistake that fraud on his part would be necessarily implied? It will be observed that the judge did not charge the jury as to the work done by the plaintiff subsequent to the suspension of the contract being different from the work specified in the contract. It is difficult to understand why the learned judge should have omitted this question in his charge to the jury. Evidence was submitted at the trial to sustain this defense, and the Circuit Court of Appeals in its determination of the case, based its decision mainly upon this question. United States v. Weisberger, 206 Fed., 641, 645.
Upon the issue so made up the jury found the following verdict, “ We, the jury in the above-entitled cause, find for the defendants.” The court denied the motion made by the Government for judgment notwithstanding the verdict of the jury.
The first question for this court to determine -is the question of res judicata. Have the questions of the impossibility of the performance of the contract, the fraud of the Secretary of the Interior, and the change made in the work by the defendants after they took over the work been determined by the suit in the Circuit Court of the United States *9 for the Eastern District of Washington, wherein this plaintiff was defendant and the United States was plaintiff? If they have been determined, and are res judicata, then it only remains for this court to ascertain the damages suffered by the plaintiff.
The general rule has been stated in this court to be that parties and privies are concluded by a judgment of a court of competent jurisdiction upon every material issue clearly presented by the pleadings, tried by the court, and judgment rendered thereon. Langston’s case, 26 C. Cls., 256; Braden’s case, 12 C. Cls., 164. In California Bridge and Construction Co. v. United States. 50 C. Cls., 40-50, the rule 3s thus stated: “ The general rule is that when an action is brought in a court of competent jurisdiction, a judgment rendered thereon is conclusive in a subsequent action between the same parties or their privies upon the same subject matter in the same court or another court of concurrent jurisdiction.” And the rule of former adjudication does not apply alone to questions actually adjudicated, but it applies equally to all questions in the case which properly might have been litigated or pleaded. Northern Pac. R. Co. v. Slaght, 205 U. S., 122, 131.
The parties in this suit are the same parties who were parties to the suit in Washington; a judgment was rendered in that court upon the same subject which the defendants here ask us to adjudicate. So far as this court is concerned the issue which the defendants are making in this case was decided in the case in Washington, and the defendants are estopped by the result of that case and can not now reopen what was closed by the legal effect of that proceeding.
After the contract was suspended the defendants took possession of a warehouse belonging to the plaintiff and occupied the" same for thirty-nine months; the rental value of this warehouse was $100 per month. At the time of the suspension of the contract the defendants took from the plaintiff mess stores worth $754.60. There was due the plaintiff by the defendants at the time of the suspension of the contract the sum of $4,552.37 unpaid earnings, and the value of the plant and equipment taken from the plaintiff by the defendants was $69,772.81; a part of said plant worth *10 $0,980.32 was returned to the plaintiff, and thus the defendants still owe the plaintiff the sum of $62,792.49 on account of the plant and equipment. These several sums make in all the sum of $71,999.46 which the court ascertains to be the amount of damages due by the defendants to the plaintiff.
The plaintiff also claims as a part of his damages the sum of $2,437.23, which is interest on money borrowed by the plaintiff prior to the suspension of the contract, which money so borrowed he used in carrying out his contract. We do not think this item of the claim should be allowed. It was not an expenditure under the contract. The court is prohibited by statute from allowing interest as damages. (Revised Statutes, sec. 1091.) This has been repeatedly held by this court. Ely v. United States, 19 C. Cls., 658; N. Y. Central & Hudson River R. R. Co. v. United States, 24 C. Cls., 22. It is not perceived how the interest here claimed as damages differs from any other interest which might be so claimed. A careful examination of the case cited in plaintiff’s brief, Kellogg Bridge Co. v. United States, 15 C. Cls., 206, does not bear out the contention that such a claim was allowed in that case.
Judgment will accordingly be rendered in favor of the plaintiff for the sum of $71,999.46. And it is so ordered.
Judge Downey, Judge Barney, Judge Booth, and Chief Justice Campbell concur.